The court did not, for any reason assigned, err in refusing a new trial.
 DECIDED OCTOBER 28, 1943.
B. H. Rodgers testified that his grocery and meat store at 810 Cascade Avenue was broken into on Wednesday night, January 20, the back window being knocked out "big enough for a man to get through." United States war bonds of the value of $800 were *Page 97 
taken. About $300 in money (including a sack of Indianhead pennies), and all of the witness's insurance policies were also taken. Other articles, including cigarettes, were scattered over the floor, from the cash register to the back window. War bonds worth $345 were returned to the witness by Detective Milligan. "They took a meat saw and a meat cleaver, and must have worked three or four hours before they got into the register. . . They split the counter all up trying to get into it, beating the box." The defendant at one time worked for Rodgers as a meat cutter, quitting his employment about four weeks before the burglary.
Mrs. S. A. Jordan testified that she and her husband saw the defendant on Carnegie Way on the night of January 20. He accompanied them home, where he and her husband engaged in drinking. He left about one o'clock that night, returning about six o'clock the following morning. He told them he returned by taxicab. "When Mr. Amoson came in . . he threw a carton of Chesterfield cigarettes over on the foot of my bed, and he had some change in his pocket, and silver money, and he had some liberty bonds . . or war bonds . . I didn't see the bonds; I just heard him talking about having them. He brought a stock of papers in with those things that he had." He and the witness's husband drank all that day. The defendant left the house that night and returned on the following day (Friday) about one o'clock, with a man dressed in white overalls. He and that man went away, and the witness, having seen in the newspaper that Rodgers' store had been robbed, looked at the papers which the defendant had brought to her house and left there; they were three insurance policies in the name of B. H. Redgers. She reported the matter to the police, and turned the insurance policies over to them.
S. A. Jordan testified substantially as did his wife, and that when the defendant came back to his home about six o'clock in the morning he brought "some pennies and some papers and come bonds; and I saw three or four one-dollar bills, it looked like. He had Government bonds. . . I saw some insurance policies the following day."
W. B. Witt, a liquor dealer, testified that his store was near the Jordan home, and that the defendant purchased liquor from him on the afternoon of Thursday, January 21, giving him 56 Indianhead *Page 98 
pennies in payment; and also exchanged 330 other Indianhead pennies for currency and silver.
T. J. Milligan, a detective, testified that on Friday following the Wednesday night burglary he arrested the defendant at 660 North Highland Avenue, searched him, and found on his person $325 in War Bonds "made to B. H. Rodgers and his daughter," which bonds were returned to Rodgers, who identified them as belonging to him. The defendant, when arrested, made no explanation of his possession of the bonds, but appeared to be drunk and "in pretty bad shape."
The statement of the accused on trial contained no denial of guilt. He said, in part: ". . and as far as Mr. Rodgers I worked for him. I never thought more of a man in my life; never had a man to treat me nicer; but this is just one thing I am ashamed of, and to be honest with you I am ashamed of . . I thought a lot of them, his wife and daughter both. I don't see how I had in my head; evidently I did. I am not trying to deny it; look like I did. I can't see why I wanted to go out there and burglarize that man's place. As far as money, I didn't get one dime. Now, when I left this man's house, I got out. I went out to my wife's uncle, but I do remember this night. Now, him and his wife were fighting all night about the money; the money I guess I brought in. Gave me some pennies. I remember something about the pennies; . . they said I carried the pennies. I think Sam . . was with me. He carried me down to get those pennies cashed. I think if they will study real good they will all say that Sam went with me to get those pennies cashed, and we bought a half pint of whisky. And that is just about all that I know of it, to tell you the truth."
T. J. Milligan testified in rebuttal, that several days after his arrest, the defendant was sober and "talked with pretty fair intelligence. . . He admitted to us being out at the place of B. H. Rodgers' grocery store, around the outside there; but he said he did not remember going in the place. He could not remember anything about the bonds."
Dr. A. B. Codington gave testimony for the defendant, which counsel contended went toward establishing insanity. But on cross-examination the witness said: "I am quite sure Mr. Amoson does know what is right and wrong, but I know that at certain *Page 99 
times he would not respond in the first place . . whether something was right or wrong, he was that far gone, which was right after one of those convulsions."
Mrs. Jordan and T. J. Milligan were recalled, and gave testimony tending to show that the defendant was sane.
The defendant was convicted. His motion for new trial contained one special ground, in which he complained that the court erred in failing without request, to charge the jury as follows: "Gentlemen, before you would be authorized to find a verdict of guilty in this case, the evidence must connect the accused with the perpetration of the alleged offense of burglary, and must not only be entirely consistent with his guilt, but inconsistent with every other reasonable hypothesis save that of the guilt of the accused."
The defendant expressly abandons the assignment of error on the general grounds, and asks for a reversal on the special ground only. The evidence for the State, taken in connection with the defendant's statement to the jury, shows that the guilt of the accused was "clearly and convincingly proved." It appears from the record that the verdict was almost if not entirely demanded. Certainly the evidence reveals that the case was not close or doubtful. Under such a state of facts the court did not err in omitting, without a request, to charge as contended. Toler v. State, 107 Ga. 682 (33 S.E. 629). InPierce v. State, 41 Ga. App. 498 (153 S.E. 434), this court held: "When this is true, it is immaterial what the judge charged or failed to charge the jury. See Cherry v. State,38 Ga. App. 388 (2) (144 S.E. 50)."
The court did not err in refusing a new trial.
Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.